Now I will call the case of Michael Riolo v. United States. Good morning, morning, may it please the court. My name is Brian DiMaggio, and I'm here on behalf of the appellant Michael Riolo. Your Honor, this case is before this court for the second time on a summary denial of Mr. Riolo's Section 2255 motion without an evidentiary hearing. We're here today to reverse that summary denial and ask that the court remand the case back to the district court to conduct an evidentiary hearing on the allegations that he's raised in his motion. It kind of dovetails into the first issue on which this court granted a certificate of appealability, which is, should there have been an evidentiary hearing in light of this court's precedent in Sanderson, a case from 1979, which is still binding. And in Sanderson, what this court held was that when a defendant alleges that his plea was a result of misadvice and misrepresentations from his lawyer, and he offers affidavits from reliable third parties, there, there was an attorney that offered one, that a court should conduct an evidentiary hearing on the motion, even where, and this is from the case itself, quote, all of the factual allegations are belied by the appellant's testimony at the Rule 11 proceeding, close quote. And Sanderson isn't the only binding case holding an evidentiary hearing is required under these circumstances. And this is a lot of cases going back. I know Judge Choflat isn't here today, but we're talking about going back to when he first got on this bench in 1975. He'll be listening, so. Yeah. There's the 1976 case, Matthews, from the former Fifth Circuit, where there, there was an affidavit from another attorney involved in support of the defendant's claim. And there, the court, the district court was like, well, these have been refuted by the Rule 11 colloquy. And in that case, the defendant was alleging they were the product, or the plea was the product of threats and coercion, and he was asked, did anybody promise you anything? Did anybody threaten you? At the Rule 11 hearing, he said, no. No, they didn't. The court said, even though he said no then, he's got an affidavit of a reliable third party he's entitled to an evidentiary hearing. The year before that, this court decided the Dugan case. In that case, they, he had the affidavit of two law enforcement officers in support of his, his allegations there. It was an unkept deal that he was alleging, and as the court said, a review of the transcript reflected that he was questioned and denied, that there were no promises made to him. Still, the court said, we've got to have an evidentiary hearing in those circumstances. Do you think our, you know, sometimes there are some pretty fine lines to be drawn in these cases, and do you think our precedent is entirely consistent on whether or not people get a hearing? I, I think it is, and I think when you contrast those three cases, Sanderson, Matthews, and was basically the only case the government relied upon in its brief on this issue. They didn't get evidentiary hearings in that case because they only tendered affidavits of the defendant himself, and that's the key part here. We have an affidavit of another attorney, Mr. Riolo's civil attorney in the case, putting aside his wife, I'm not saying she's not credible, but you have another attorney here, and that's held to cut it, and they're in support of what he says, and you've got . . . Remind me what specifically you believe the attorney would testify to. Mr. Houston, the civil attorney, would say basically everything that Mr. Riolo said, which is, I was under the impression that the maximum Senate's level here would be a level 30, and that Mr. Riolo would not have agreed to plead guilty if that wasn't the case. He wasn't involved in the plea negotiations. He wasn't involved . . . Because he's the post-trial lawyer, right? No, he's actually a partner of Mr. Riolo's criminal lawyer, Ms. Van Bleet, and if you go through the time records that were filed by the government, the supplemental appendix, you'll see that Mr. Houston sits in on several of those meetings, and he also . . . When you say those meetings, what do you . . . The meetings that Mr. Riolo's criminal attorney had with Mr. Riolo about the plea and the circumstances surrounding it. There's also an email that Mr. Houston was copied on from the government's lawyer talking about we agree with your offense level calculation, a level 30. So he was heavily involved in it, and he was actually handling . . . It appears what there was is there was a separate federal civil case relating to Mr. Riolo's actions that was filed, and he was handling that. But he was involved in the discussions, and that's how he came to know about this. So I think that email is also very significant too. It's not just Mr. Riolo saying, this is what I thought from my attorney. He's got an email from the U.S. attorney saying, hey, we agree with this offense level that's so critical, and that was sent to Mr. Riolo, but it was also sent to Mr. Houston as well. How is any of this going to bond the sentencing judge? I think that's part of Mr. Riolo's claim is when I'm making it clear to my attorney, the only way I'm going to plead guilty is if I can have some sentence of ten years, then the lawyer needed to take some steps to effectuate that. The lawyer was telling him, okay, that's what it's going to be, that's what it's going to be, but he didn't go out and get that in writing. There's a lot of ways he could have done it. Maybe he could have negotiated differently and not pled to five counts. Maybe he could have . . . Remind me again what the proof is, or what your proffer is, that there was a ten-year deal. Number one, you have the email from the government lawyer, Mr. Garcia, or it's not from Mr. Garcia, it's an email from Mr. Riolo's lawyer, Van Vliet, to Riolo and Mr. Houston saying, I spoke to Rolando, Rolando Garcia was the government's lawyer. He agrees with our offense level calculation, which was a level 30. Mr. Riolo was under the impression, so was Mr. Houston, so was Ms. Riolo, after sitting in those meetings, that that's what it was going to be, that there wasn't any risk of it going any higher than that. I'd submit to this court, if a civil lawyer, Mr. Houston, is sitting in on these meetings and he's under that impression, and it's buttressed by a claim from the United States Attorney, how would Mr. Riolo, not a lawyer, view it any differently? If a civil lawyer thought it was locked in, I think it's fair to assume Mr. Riolo thought it was locked in, as he alleged. I just don't have this in mind. Did you move to withdraw the plea? Mr. Riolo thought about doing that initially and was told, he reached out to another lawyer, there's an email in the record to that effect, another lawyer named Rosenbaum, it didn't happen. Then he went, he got sentenced, and then he filed this 2255, which he styled basically, if you look at the relief, it was to vacate the unknowing plea that he entered. If you win today, then what happens is you just go back and have a hearing on whether or not he can withdraw his plea. That's all we're asking for. We're asking to have an evidentiary hearing. You would think a summary dismissal would have made this thing more efficient, but it isn't because this is the second time it's bounced up to this court. I think what's a little offensive to this court's precedent is the district judge's refusal to recognize any of these cases. Sanderson's not cited in any of the R&R's or the district judge's orders. The affidavits aren't even credited by the district judge. What the district judge did here is what this court said you can't do. You can't solely rely upon the Rule 11 colloquy when you have these affidavits. They're just totally blowing off this court's precedent. It'd be one thing maybe if they'd cite Sanderson or some of these cases and say, hey, here's why it's different. He's not even doing that. Riolo's pointed that out several times. That's all he's asking for. He's only asking for a hearing where he can either prove this up or the court can make credibility determinations because there is a counter-affidavit from his criminal defense lawyer, just like there was in Matthew's, I may add. The court said we can't make these determinations and they can't make them on a summary thing. When you have counter-affidavits, like in summary judgment, you've got to have a hearing because the standard on 2255 is conclusively refuted. That's a pretty high standard to meet. That's where all these cases come from. They can't conclusively refute it. That's what we're asking. We're asking this court simply to apply 40-plus years of precedent to this claim and remand the cause back for an evidentiary hearing. The other ground on which the court granted a certificate of appealability was on how the court applied the prejudice prong. The district court basically said, I hear what you're saying, Mr. Riolo, but I would have given the same sentence anyways. That's not the standard when you're talking about a defendant who pleads in lieu of going to trial. Mr. Riolo says, I would not have pled. I would have gone to trial. That's how it was supposed to be evaluated. That's not what he did there. He just evaluated what kind of sentence he may have given him had the plea gone down otherwise. Hill v. Lockhart's been refined recently by the United States Supreme Court. They've said the inquiry focuses on the defendant's decision making. I'm sure the government's going to get up here and say, well, there was a heck of a lot of evidence against Mr. Riolo. It would have been a total face mash if he went to trial. That's what was argued in Lee. Lee actually used a football term. All he had was a Hail Mary's chance if he went to trial. They say if things are important to a defendant, there may be bigger considerations than what may go on at a trial and losing a trial. In Lee, it was about the defendant may get deported. Mr. Riolo's claim was, I don't want anything more than ten years because I want to get out in time to see my kids grow up. I submit if getting kicked out of the country is important enough as a reason to set aside a plea, then certainly somebody wanting to get back to their kids should be. For all those reasons, I believe the court ought to remand this hearing or remand this back to have an evidentiary hearing on Mr. Riolo's claim. Thank you. Good morning. Thank you, Judge Martin, and may it please the court, Vivek Suri on behalf of the United States. The district court did not abuse its discretion in denying an evidentiary hearing in this case. In analyzing Mr. Riolo's claim, it helps to distinguish between two related but somewhat different theories that we heard this morning. The first is the theory that Mr. Riolo suffered ineffective assistance of counsel because his lawyer put him under the impression that his offense level would be no higher than 30, that he would face no more than ten years in prison. And the second is the somewhat more specific theory that there was an agreement with the government that somehow wasn't reflected in the plea agreement. I just have a practical question. Did you represent the government on the first appeal? No, I did not. All right. Well, wouldn't it have been easier to just have a hearing? I mean, the statute 2255 says, unless the motion and the files and records in the case conclusively show that the prisoner is entitled to no relief, I mean, so the government's been to the court of appeals twice on this? I mean, I just, you know, it's one of the things young lawyers have to suffer with. They'll listen to people that have practiced for decades. So, you know, in the good old days, we would have just given them a hearing and not taken two appeals to the court of appeals. I appreciate that the statutory standard is 2255, is conclusively established that there's no entitlement to relief. I also appreciate that in hindsight, it may have been the case that it would have saved time to hold an evidentiary hearing. The standard for this court in this appeal, however, is whether the district court abused its discretion in declining to hold that hearing, not whether in hindsight it would have been practically better to hold a hearing. Well, but I mean, if we say the statute requires, you know, that the motion and the files and in our view, they don't conclusively show, then that would be, that would meet the standard, wouldn't it? It would, and I'd like an opportunity to explain why it doesn't meet that statutory standard. So the first theory that I mentioned was this idea that Riolo had an expectation of an offense level of 30. Now, that's something that the judge repeatedly, during the plea colloquy, warned Riolo not to rely on. He said that you face a maximum sentence of 20 years in prison on each count. So most hypothetically, the government had said, your offense category is going to be 30. We've looked into it, that's what it's going to be. So would that have prompted whatever precautionary language you would get later on from the district judge or not? The precautionary language that the district judge gave in this case would be sufficient even in the circumstance that Your Honor describes, unless the hypothetical is that there was an agreement, a commitment to an offense level of 30, which is a separate kind of argument. So the precautionary language in this case was, first, that your maximum sentence is 20 years. Second, the probation office still needs to gather all the facts necessary to determine your sentencing range. Third, until that procedure is completed, neither I, the judge, nor anyone else knows what your sentencing range is going to be. Or even if the government makes a recommendation, the judge isn't bound by that recommendation. And fifth, regardless of what your lawyer has told you, the sentencing range may end up being different from what your lawyer has told you. So in the face of all of that, it's very difficult for a defendant to say, having responded I understand in response to each of those questions, for the defendant now to say, he didn't understand after all. That's precisely what the Supreme Court has warned against in cases like Blackledge. Now- Yeah, but I mean, we live in this world, and we understand that nobody really knows what their sentence is going to be until they get their sentence. But here's a person who has his lawyer saying it's going to be level 30. The government lawyer says, yeah, I agree, I've calculated the same way. So he thinks, well, both sides agree. And so everything he hears in the plea colloquy, he hears through that filter. I appreciate that given the posture of this case where there's been no evidentiary hearing, we have to accept that is what his lawyer told him. But what the judge told him is, it doesn't matter what your lawyer told you, the lawyer's going to be incorrect. It may be something completely different from what your lawyer told you, because we haven't gathered all the facts. And it's important to stress, if what the judge said in this case isn't enough, it's hard to imagine what would be enough. The entire purpose of the Rule 11 colloquy is for the judge to address the defendant personally, to make sure that the defendant understands the consequences of what he's doing, no matter what his lawyer might have told him previously. And if this very thorough colloquy isn't enough, then it's hard to imagine what would suffice. So now on their side, they have these affidavits from third parties where they say, the lawyer advised me that the offense level would be 30, and they cite the Sanderson decision. The way in which we respectfully suggest that the court should understand the Sanderson decision is that was a case, first and foremost, about threats and coercion. The lawyer in that case is alleged to have pressured the defendant into pleading guilty. That's the kind of thing that undermines the truthfulness of the plea colloquy itself. If a defendant is sitting in front of a court in the plea colloquy and his lawyer, the one who supposedly pressured or intimidated him, is right next to him, then of course you might expect that the defendant might say, no, no one has pressured me in that circumstance. You might want to leave some room for the plea colloquy to be questioned on the basis of third party affidavits. That's not what's going on in this case. In this case, the critical issue is the effect of the judge's advice. Did the defendant understand at the time he pleaded guilty, after he listened to all of the judge's warnings, what the consequences of his decision were? And on that point, the best evidence of what the defendant understood is what he said he says years later in a 2255 proceeding. I'd further turn, unless the court has more questions on that issue, to the alternative theory that we've heard, that there was some kind of agreement with the government that there should be a cap on the offense level of 30. The first problem with that is this court rejected that theory on direct review. The court said there's no indication of any such agreement, and we've heard no justification for relitigating that here today. Secondly, the plea agreement contradicts that theory. The plea agreement says that the agreement sets forth the only recommendations that the government will make, and that anything not set forth in the agreement is not something the government promises to do. It makes no reference to a supposed deal to cap the offense level at 30. Then there's the plea colloquy itself. The judge asked Mr. Riolo, has anyone made any promises or representations other than what's in the plea agreement? If his lawyer had told him the government has agreed to cap the offense level at 30, that would have been a good moment to mention that. He didn't mention that. He waited until much later to raise that issue. The final point is, if you look at Mr. Riolo's own affidavits, they don't fully corroborate this theory that there was such an agreement. What Mr. Houston says in his affidavit is that Ms. Van Vliet said she expected the offense level would be 30. He didn't say that she represented that the government had made an agreement that the If there's nothing further on that, then I'll turn to the other issue in the case, which is whether the district court properly analyzed prejudice. On this point, I think it would be helpful if I could refer the court to the magistrate judge's first report and recommendation after remand. This is Appendix page 252. There's a paragraph here where the magistrate judge, whose report the district court incorporated, discusses the standard that he's applying. It begins, generally, a court first determines whether counsel's performance fell below an then determines whether there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. That's the usual Strickland standard. Magistrate then goes on. In the context of a guilty plea, the first prong of Strickland requires petitioner to show his plea was not voluntary and continues, while the second prong requires petitioner to show a reasonable probability that but for counsel's errors, and here's the important point, he would have entered a different plea, citing Hill against Lockhart. So the magistrate judge explicitly set out the rule that they claim he should have applied, and then the magistrate judge went on to apply that rule, to reject this claim. The district court incorporated that by reference. That's the correct analysis. If the court has no further questions, I'll sit down. We appreciate your presentation. Thank you. Just because you sign a case . . . Let me ask you this. What specifically was the ineffective assistance conduct? What did the defense counsel not do? Well, what he did is he misadvised Mr. Riolo that this is what the sentencing guidelines are going to be, okay, and then did not, Mr. Riolo's got several grounds to this, did not lock that in, did not get a plea agreement to that effect, and then there's several other grounds. He didn't challenge a certain enhancement that was brought on, but it circles back to that this is what the guidelines are going to be, and he misadvised him about it. It's no different than telling somebody, this is how much time you're facing in this charge, and it carries a 15-year offense, and you tell them they're only facing five. You misadvise somebody about the guidelines, that's ineffective. That's misadvice. So, civil counsel then was privy to that misrepresentation? He was. He said he was in these plea negotiations. He was in meetings with Mr. Riolo and the criminal defense lawyer . . . Are you saying the 30-month offer was made and presumably accepted? Yes, sir, and if I may, let me grab the record real fast. Mr. Houston, the civil lawyer's affidavit appears at pages 61 and 62 of the record, Your Honor, and as you go through there, he talks about he was present at several meetings between Riolo and his defense counsel regarding his decision to enter a plea agreement. The most significant factor in Riolo's mind was that he avoided a potential sentence of more than ten years. In these meetings, it was my impression the government had agreed to a 97-month sentence, and it would be unlikely the judge would oppose one higher than that. Another meeting, when they mentioned the plea agreement, counsel stated to him in my presence, she expected the offense level in the case would be 30. It was only . . . Oh, she committed . . . She is . . . She is the criminal defense lawyer, Your Honor, Ms. Van Bleet. Then, he goes on to say defense counsel said, I'll confirm that with the government, and then we have the email from the government in the record, in the appendix at page 63. Both of these counsel were obligated to advise this man that the estimate could be wrong. I believe that Ms. Van Bleet is the one that was obligated to tell him that. Mr. Houston, sitting in on the meetings as a civil attorney in related civil litigation, I don't believe was under that obligation, Your Honor. And that happens. I mean, you were in practice. It happens from time to time where somebody may get something outside their expertise. They bring somebody else in, and you talk about it. Happens with me a lot kind of the other way around. Somebody's got a civil thing pending, and oh, wait, it kind of smells criminal. Somebody will hire me to come sit in on the meeting so I can listen, and hey, you might want to assert the fifth year or things of that nature. Don't tender those documents to the government as it relates to that claim. You see that a lot in False Claims Act type cases. I get hired to do that type of stuff, Your Honor. So, the government's lawyer ended with saying, well, they cited Hill in the first R&R. Well, you can cite something all day long if you don't apply it. It's not worth the ink that you wrote on the paper. I think the most important thing to remember is something that came out of Judge Martin's mouth, which is you have to consider the filter through which Mr. Riolo was reviewing or accepting all this when he's sitting in that Rule 11 colloquy. He's got a whole background of information provided to him by a lawyer he hired, which he believed was confirmed by the government's lawyer. Remember, the government's lawyer is the one that's trying to put him in prison, and he sits down for that, and he listens to it, and sure, he answers the questions, but that's a whirlwind for anybody, and if you go back and look at these old cases, they got asked the questions too, and they told the district judge what they told them, but later filed motions that were in support of affidavits, and the court has said, and Sanderson and all the other cases, if that's the case, and you have that reliable third-party affidavit, then we got to give the defendant an evidentiary hearing. Why should we hear this claim if he never moved to withdraw his plea? Well, he tried to at the time, but got advice not to do so. He was told by his lawyer, if you do that, it's just going to make the district judge mad, and he's going to give you a harsher sentence. There's an email in the record to that effect that he sent. So, he is asking to do that in his 2255 motion. Understand where the court's coming from, and what they say in Lee as well, the newer case from the Supreme Court about Hill versus Lockhart, you take a look at contemporaneous actions at the time, and one of his actions at the time was, oh my gosh, I have this information, and it's not what I expected, not what I was told, let me try to withdraw the plea, but he got advice from the same lawyer that misadvised him. If you do that, pardon my language, you're going to tick the judge off, and you'll get a worse sentence. So, for those reasons, Your Honor, we believe Sanderson compels an evidentiary hearing in this cause. Thank you. Thank you very much.